IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAPITAL ONE AUTO FINANCE, INC., et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 25-1407-KSM |

<u>MEMORANDUM</u>

Marston, J.                                                                                                September 2, 2025

Pro se Plaintiff Gary Johnson is no stranger to consumer protection litigation. In the last two years, he has filed at least four other lawsuits in this courthouse against various creditors for violations of federal and state consumer protection laws.[1] In this most recent action, Johnson brings claims against Defendants Capital One Auto Finance, Inc. and Chapman Nissan LLC for their actions related to the financing and later repossession of Johnson's 2018 Nissan Maxima. (Doc. No. 1.) Capital One has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 22), and Chapman has filed a motion for judgment on the pleadings under Rule 12(c) (Doc. No. 24). Johnson opposes both motions. (Doc. Nos. 25, 26.) For the reasons discussed below, Defendants' motions are granted.

I.    **BACKGROUND**

This case arises from a vehicle repossession dispute. On April 28, 2021, Johnson purchased a 2018 Nissan Maxima from Chapman and financed the purchase through a retail

---

[1] *See Johnson v. J.P. Morgan Chase Bank N.A.*, Case No. 24cv5631 (E.D. Pa. 2024); *Johnson v. Am. Express Nat'l Bank*, Case No. 24cv5510 (E.D. Pa. 2024); *Johnson v. Credit Control, LLC*, Case No. 23cv5050 (E.D. Pa. 2023); *Johnson v. Stillman Law Office*, Case No. 23cv2433 (E.D. Pa. 2023).

installment sales contract ("RISC"), which was executed the same day and later assigned to Capital One. (Doc. No. 1 at 2–3.) Capital One financed the purchase pursuant to the RISC and assignment, and for more than a year, Johnson made monthly payments to Capital One. (*Id.* at 3; Doc. No. 23 at 7–8, Ex. 6.) Johnson alleges that sometime after he took possession of the vehicle, however, Chapman and Capital One created a new "counterfeit contract," which bears his allegedly forged signature and is dated May 4, 2021. (Doc. No. 1 at 3.) The "counterfeit contract" is nearly identical to the RISC, except it also includes an arbitration provision. (*Compare id.* at Ex. 1, *with id.* at Ex. 2.) Johnson claims he learned about the "counterfeit contract" in January 2022 when he requested a copy of the RISC from Capital One but was sent the "counterfeit contract" instead. (*Id.* at 4, Ex. 2.)

More than a year later, Johnson stopped making payments to Capital One, with his final payment dated August 10, 2022. (*See id.* at Exs. 3, 4, 6.) Because his account was delinquent, Capital One, after written notice, issued a repossession order for the 2018 Nissan Maxima. (*Id.* at Ex. 3; Doc. No. 27 at 2). The vehicle was repossessed on November 14, 2023 and later sold to a third party. (Doc. No. 1 at 5–6, Ex. 4.) Afterward, Johnson requested a full "statement of account," to which Capital One sent another copy of the "counterfeit contract," a transaction history report, and a notice, which explained that after the proceeds from the repossession sale were credited to Johnson's account, his remaining balance was $12,065.88. (*Id.* at 6, Exs. 6, 7.)

On February 27, 2024, Johnson reviewed his TransUnion consumer credit report, which reflected Johnson's delinquency, Capital One's repossession, and the remaining balance of approximately $12,000, which had been "charged off."[2] (*Id.* at 7–8, Ex. 8.) That same day,

---

[2] "A charge off on a credit report typically means a creditor has written off a debt as a loss." *Johnson v. J.P. Morgan Chase Bank N.A.*, Civil Action No. 24-5631-KSM, 2025 WL 845910, at *1 n.1 (E.D. Pa. Mar. 18, 2025).

Johnson disputed his report with TransUnion, challenging the information furnished by Capital One as incomplete and inaccurate. (*Id.* at 8.) TransUnion forwarded Johnson's dispute to Capital One. (*Id.*) Capital One investigated and informed TransUnion that it had verified the accuracy of the information, and TransUnion sent Johnson a copy of Capital One's findings. (*Id.* at 8, Ex. 8.)

On March 14, 2025, Johnson filed this suit against Capital One and Chapman. (*See generally* Doc. No. 1.) He brings claims for breach of contract, unjust enrichment, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and violations of the Equal Credit Opportunity Act ("ECOA") against both Defendants, as well as violations of the Fair Credit Reporting Act ("FCRA") against only Capital One. (*Id.*) Capital One now moves to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), and Chapman moves for judgment on the pleadings under Rule 12(c). (Doc. Nos. 23, 24.)[3]

## II.   LEGAL STANDARD

Although Capital One moves to dismiss and Chapman moves for judgment on the pleadings, the same standard governs both motions. *See Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) ("A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion." (quotation marks omitted)). To survive either motion, Johnson's Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has

---

[3] Chapman previously answered the Complaint, and in its Answer, denied many of Johnson's allegations, including Johnson's assertions that his signature was forged and that the May 4, 2021 contract is "counterfeit." (Doc. No. 18 at 4.)

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted).

In ruling on Defendants' motions, the Court must accept as true the factual allegations in Johnson's Complaint and all reasonable inferences that can be drawn from those allegations. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Because Johnson is proceeding pro se, we liberally construe the allegations in his Complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). As a general matter, the court does not look beyond the allegations in a plaintiff's complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). That said, the court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

### III.    ANALYSIS

Defendants seek dismissal of Johnson's claims in their entirety. The Court begins with the federal claims, as they serve as the basis for this Court's subject matter jurisdiction.[4] *See* 28

---

[4] Because Johnson and Chapman are both citizens of Pennsylvania (*see* Doc. No. 1 at 2), this Court does not have diversity jurisdiction under 28 U.S.C. § 1332. Instead, as Johnson acknowledges (*see* Doc. No. 1 at 1), the Court has federal question jurisdiction over Johnson's ECOA and FCRA claims, *see* 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Johnson's state law claims, *see id.* § 1367(a).

U.S.C. §§ 1331, 1367(a). Both Defendants argue that Johnson has failed to allege that he belongs to a protected class or suffered a discriminatory adverse action as needed to state a claim for violation of the ECOA. (Doc. No. 23 at 15–17; Doc. No. 24 at 6–7.) In addition, Capital One argues that Johnson has not plausibly alleged that the credit information it furnished to TransUnion was inaccurate or that its investigation into the dispute was unreasonable such that it can be found to have violated the FCRA. (Doc. No. 23 at 12.)

      A.      **ECOA Claims Against Both Defendants**

The Court begins with Johnson's ECOA claims. The ECOA provides legal recourse for individuals who allege discrimination during any aspect of a credit transaction. 15 U.S.C. § 1691(a) ("It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction."); *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 463 (3d Cir. 2020). To state a claim under the ECOA, a plaintiff must allege that he: (1) was a member of a protected class under the Act; (2) applied for credit from defendant; (3) was qualified to receive credit; and (4) despite qualification, was denied credit or had the terms of credit revoked or changed (i.e., suffered an "adverse action"). *Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019) (citing *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010)); 15 U.S.C. § 1691(d)(6) (defining "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested"). In addition, the plaintiff must put forth factual allegations to "support an assertion of discrimination," such as allegations that the defendant "has treated more favorably similarly situated persons not within the protected class." *Stefanowicz*, 765 F. App'x at 772 (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999)). Here, Johnson has not alleged

facts to suggest that he belongs to a protected class or that he suffered a discriminatory adverse action.

First, Johnson has not alleged that he belongs to a protected class under the ECOA. The Act prohibits discrimination: "(1) on the basis of race, color, religion, national origin, sex or marital status, or age; (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). Johnson states that he satisfies the third prong because he "in good faith exercised his right to purchase a 2018 Nissan Maxima on credit." (Doc. No. 1 at 17–18 (citing 15 U.S.C. § 1691(a)(3)).) But an application for financing is not itself the type of conduct that triggers protected-class status under § 1691(a)(3). Instead, that subsection is an anti-retaliation provision, barring "retaliatory credit denials or terminations against applicants who" previously exercised "their rights under any part of the Consumer Credit Protection Act." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998) (quoting ECOA Amendments of 1976, Pub.L. No. 94–239, 1976 U.S.C.C.A.N. 403, 407); *see Pettineo v. GE Money Bank*, Civil Action No. 10-2569, 2011 WL 93065, at *3 (E.D. Pa. Jan. 10, 2011) (finding the plaintiff sufficiently "alleged membership in a protected class by virtue of the prior [Consumer Credit Protection Act] actions he references in his Complaint and Response"). This makes sense because if, as Johnson suggests, a plaintiff could satisfy § 1691(a)(3) merely by having submitted a credit application, then *every* plaintiff bringing an ECOA claim would necessarily belong to a protected class under § 1691(a)(3) and the requirement would be rendered meaningless. Because Johnson has not alleged that he belongs to a protected class, his ECOA claim fails. *See Chiang v. Veneman*, 385 F.3d 256, 259 (3d. Cir. 2004) (establishing that to assert an ECOA claim Plaintiff must show membership in a protected class).

6

Second, and in the alternative, Johnson's ECOA claim fails because he has not alleged that he was subjected to a discriminatory adverse action. The Act defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Here, Johnson has not alleged that either Defendant denied him credit. To the contrary, the Complaint suggests Johnson was *granted* financing for the 2018 Nissan Maxima and took possession of the car the same day. (*See* Doc. No. 1 at 2, 3, Ex. 1, Ex. 3.) Perhaps trying to plead around this unavoidable fact, Johnson alleges that he "never received any proceeds of a loan that was obtained" under the RISC. (Doc. No. 1 at 18.) To the extent Johnson means to argue that he was denied financing because the money went from Capital One to Chapman without first going to him, the argument fails. Johnson was extended credit when Capital One paid Chapman the cost of the 2018 Nissan Maxima on his behalf and he left with the vehicle; he did not have to receive the money first for the Court to find his credit application was granted. To the extent Johnson means to argue that he was denied financing under the RISC because Capital One financed the loan pursuant to the "counterfeit contract," his argument also fails. Regardless of which contract controls, Johnson cannot escape the fact that Capital One granted his application for financing and extended him credit for the purchase of the vehicle.[5]

Johnson also appears to argue that the repossession of his 2018 Nissan Maxima is the relevant discriminatory, adverse action. (*See* Doc. No. 1 at 19.) But repossession following default is not a revocation of credit or other "adverse action" under the ECOA. *See* 12 C.F.R.

---

[5] Johnson repeatedly states that neither Defendant is a "holder in due course" with respect to the RISC. (*See, e.g.*, Doc. No. 1 at 3, 19; Doc. No. 25 at 19.) Johnson does not explain what he means by this, nor has he alleged facts to suggest the RISC is invalid or that Capital One (as the company that financed his auto loan) was not entitled to repayment per the RISC's terms and assignment.

§ 202.2(c)(2)(ii) (explaining that the term "adverse action" does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account"); *Scott v. Fred Beans Chevrolet of Limerick, Inc.*, 183 F. Supp. 3d 691, 696 (E.D. Pa. 2016) (finding car dealership did not take an adverse action against the debtor when it repossessed her car for failure to make monthly payments and rejecting debtor's arguments that repossession amounted to "*de facto* revocation of the RISC"); *Southern v. Golden Gate Auto Sales, Inc.*, 487 F. Supp. 2d 951, (N.D. Ill. 2006) ("Golden Gate's actions in repossessing and continuing to hold Southern's vehicle do not, however, constitute an 'adverse action' under the ECOA" because "[t]he undisputed record shows that Southern missed at least two payments and that his delinquency triggered Golden Gate's initial repossession of her vehicle."); *cf.* 15 U.S.C. § 1691(d)(6) (explaining that the term "adverse action . . . does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default").

And even if the repossession did qualify as an adverse action under the ECOA, Johnson has not alleged facts to suggest the repossession was discriminatory. Johnson has not, for example, alleged that Capital One declined to repossess the vehicles of others who defaulted on their auto loans,[6] or identified any communications by Capital One to suggest the repossession was discriminatory as opposed to Capital One's normal course of action when a consumer defaults on their loan. Without these or similar allegations, the Court cannot credit Johnson's bald assertion that Capital One's actions were based on unlawful discrimination. (Doc. No. 1 at

---

[6] This paragraph highlights another problem with Johnson's assertion that an application for financing itself renders an individual part of a protected class. If we were to accept Johnson's proposed protected class, then every person who had their vehicle repossessed after defaulting on their loan with Capital One would be part of the same class of persons as Johnson because every one of them would have applied for financing. There would, then, be no individuals outside of the protected class to whom the Defendants' conduct toward Johnson could be compared.

8

17–18); *see Stefanowicz*, 765 F. App'x at 772 (finding the district court properly dismissed ECOA claims where the plaintiff "asserted only a conclusory statement that 'treatment is disparate and the impact is disparate,'" which was "insufficient to show that other similarly situated persons who are not members of a protected class were treated more favorably when they applied for a loan modification"); *Hartman v. Bank of N.Y. Mellon*, 650 F. App'x 89, 91–92 (3d Cir. 2016) (finding the plaintiff failed to adequately plead a violation of the ECOA because she did not "plausibly allege that the defendants acted with a discriminatory purpose"); *Shahin v. PNC Bank*, 625 F. App'x 68, 70–71 (3d Cir. 2015) (same).

\* \* \*

In sum, Johnson has not alleged that he belongs to a protected class or that he suffered a discriminatory adverse action under the ECOA. Accordingly, his ECOA claims are dismissed. Because Johnson admits that Defendants granted his request for financing and the Court finds the repossession was not an "adverse action," he cannot save his ECOA claims with additional factual allegations. Thus, amendment is futile, and the ECOA claims are dismissed with prejudice.

### B.     FCRA Claim Against Capital One

Next, Johnson claims Capital One furnished false information about his auto loan to TransUnion and conducted an unreasonable investigation into his subsequent credit dispute in violation of the FCRA. (Doc. No. 1.) Congress enacted the FCRA "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010). Consumer reporting agencies, like TransUnion, compile credit data from banks and other lenders, known as "furnishers," into personal credit reports used to assess an individual's creditworthiness. *Myers v. Midland Credit*

*Mgmt., Inc.*, No. 13-2455, 2014 WL 981311, at *3 (M.D. Pa. Mar. 13, 2014). Section 1681s-2(b) of the FCRA imposes specific responsibilities upon furnishers, including a duty to accurately report credit information to the reporting agencies and to conduct a reasonable investigation when a consumer disputes the information reported. *See SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). Johnson claims Capital One violated all the duties outlined in § 1681s-2(b)(1) when it reported Johnson's auto loan as delinquent, failed to conduct a reasonable investigation into the dispute Johnson submitted to TransUnion, and refused to withdraw its assertion of delinquency. (Doc. Nos. 1, 25.)

To state a claim under § 1681s-2(b), a plaintiff must establish three elements: (1) that he notified a credit reporting agency of the dispute under § 1681i, (2) that the agency notified the furnisher about the dispute, and (3) that the furnisher failed to investigate or rectify the disputed charge. *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017); *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021). Before reaching these elements, however, the plaintiff must make a threshold showing that the furnished information is in fact inaccurate. *See Ostrander v. Trans Union LLC*, CIVIL ACTION NO. 20-5227, 2021 WL 3271168 at *11 (E.D. Pa. Jul. 30, 2021). This preliminary requirement recognizes that when a furnisher has already provided accurate information, it has no further duty to investigate. *See id.*; *Holland*, 574 F. Supp. 3d 292 at 302 ("[Section] 1681s-2 would be nonsensical if a plaintiff could make a claim against a furnisher that it failed to investigate accurate information.").

Capital One argues that Johnson's FCRA claim fails because he has not alleged facts to suggest that the information Capital One furnished to TransUnion was inaccurate. (Doc. No. 23 at 12.) The Court agrees. As provided by the FCRA, credit information is "inaccurate" if it is incorrect or materially misleading in such a manner that it can be expected to have an adverse

effect. *See Holland*, 574 F. Supp. 3d 292 at 298 (citing *Seamans v. Temple Univ.*, 744 F.3d 853, 856 (3d. Cir. 2014)). Here, Capital One accurately informed Trans Union that it had extended an auto loan to Johnson, for which Johnson was in default, resulting in the repossession of his car. Johnson argues that this information is inaccurate because Capital One's basis for the auto loan is the "counterfeit contract," which is not legally enforceable against Johnson. (Doc. No. 1 at 3, 5; Doc. No. 25 at 14.) According to Johnson, he was never obligated to make payments to Capital One under that agreement because he did not sign it, and therefore, cannot now be listed as in default for having ceased payments. (Doc. No. 1 at 5; Doc. No. 25 at 14.)

But even accepting Johnson's allegations that he did not sign the May 4, 2021 contract, that alone does not render the information furnished by Capital One inaccurate. (*See* Doc. No. 1 at Ex. 3.) Johnson admits to signing the RISC, which was assigned to Capital One, and therefore, even if we disregard the "counterfeit contract" as unenforceable, Johnson remains bound by the terms of the RISC. (Doc. No. 1 at 2–3.) The payment obligations under the RISC are the same as those under the "counterfeit contract," so regardless of which one controls, Johnson was obligated to remit monthly payments to Capital One. (*See id.* at Exs. 2, 3.) Johnson concedes that he did so for more than a year and that he ceased making payments after August 2022, at which point the 2018 Nissan Maxima was repossessed. (Doc. No. 1 at Ex. 6.) These allegations confirm the accuracy of the information that Johnson furnished to Capital One. (*See* Doc. No. 1 at Ex. 2; Doc. No. 23 at 10.)[7]

---

[7] Because the information furnished by Capital One is not inaccurate, the Court need not address the reasonableness of Capital One's investigation. *See Holland*, 574 F. Supp. 3d 292 at 302 (holding that, because the court had already found no inaccuracies in the consumer credit report, Plaintiff's claims regarding the reasonableness of the investigation collapse).

In sum, because the Court finds that Capital One provided accurate information to TransUnion, Johnson's Complaint fails to state a plausible FCRA claim, and this claim is also dismissed. This is not a deficiency which can be cured with additional factual allegations, so amendment would be futile and the FCRA claim is dismissed with prejudice.

### C. State Law Claims

Having dismissed each of Johnson's federal claims, the Court declines to continue to exercise supplemental jurisdiction over Johnson's state law claims. *See* 28 U.S.C. §1367. Accordingly, these claims are also dismissed; however, their dismissal is without prejudice to Johnson's right to bring these claims in state court.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss and motion for judgment on the pleadings are granted. Johnson's federal claims are dismissed with prejudice. The Court declines to continue exercising supplemental jurisdiction over Johnson's state law claims, so those claims are dismissed without prejudice to his right to pursue them in an appropriate state court. An appropriate order follows.